UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SELVI TANKISI,

                        Plaintiff,

                                                                                 <u>DECISION AND ORDER</u>

                                                                                                          10-CV-6412L

            v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

       In this action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner"), plaintiff Selvi Tankisi ("plaintiff") appeals from the Commissioner's denial of disability insurance benefits.

       On January 30, 2007, plaintiff, then thirty-seven years old, filed an application for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since March 9, 2006, due to dizzy spells, arm weakness, and inability to sit, stand or walk for extended periods of time. (T.145-155, 164). Her application was initially denied. (T. 63-38). Plaintiff requested a hearing, which was held via videoconference on June 16, 2009 before Administrative Law Judge ("ALJ") David Ettinger. (T. 161). Plaintiff, whose first and primary language is Turkish, was represented by counsel and provided with Turkish translation services by an interpreter at the hearing. The ALJ issued a decision on July 20, 2009, concluding that plaintiff was not disabled under the Social Security Act. (T. 11-18). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 21, 2010 (T. 1-3). Plaintiff now appeals.

The Commissioner has moved (Dkt. #12), and the plaintiff has cross moved (Dkt. #13), for summary judgment. For the reasons discussed below, the Commissioner's motion for summary judgment is granted, plaintiff's motion is denied, and the complaint is dismissed.

DISCUSSION

**I.     Analysis of Disability Claims**

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires an ALJ to follow a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). Then, the ALJ determines whether the claimant's RFC permits her to perform the requirements of her past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770,  774 (2d Cir. 1998)  *quoting*  *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

## II.     The ALJ's Decision

ALJ Ettinger's decision contains substantial analysis of the medical evidence of record, and explicitly applies the "special technique" prescribed for claims of physical and mental impairments." 20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3).

The ALJ first considered plaintiff's claims of physical impairment caused by a bulging disc and annular tear in plaintiff's lumbar spine, and degenerative joint disease, together with the mental impairment of adjustment disorder, which the ALJ determined together constituted a severe impairment not meeting or equaling a listed impairment.

In analyzing the pertinent evidence of plaintiff's exertional limitations, the ALJ found that plaintiff could perform light work with certain additional limitations: no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, and work that does not require complex or detailed instructions. (T. 15). Plaintiff makes no objection to the ALJ's determination of her RFC as it relates to the exertional limitations posed by the impairments identified by the ALJ, and I find that that determination is supported by substantial evidence in the record.

With respect to non-exertional limitations, the ALJ concluded that plaintiff had failed to show that she was markedly restricted in two or more of the four designated areas: activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, and repeated episodes of extended decompensation. Rather, the ALJ found that plaintiff was only "moderately" restricted with respect to daily living, social functioning, and maintaining concentration, and that she had experienced no extended episodes of decompensation.

Given the RFC determined by the ALJ, vocational expert Miriam Green testified that plaintiff was able to perform her past relevant work as a sewing machine operator, as well as a sedentary assembly job. (T. 56).

### III.    Plaintiff's Grounds for Appeal

Plaintiff initially claims that the ALJ failed to provide her with an adequately qualified interpreter at the hearing. *See generally DiPaolo v. Barnhart*, 2002 U.S. Dist. LEXIS 2707 at *24 (E.D.N.Y. 2002) ("[t]o ensure that claimants with limited English proficiency . . . are properly served, [SSA] must have a qualified interpreter to facilitate the processing of their claims"); *Taveras v. Apfel*, 1998 U.S. Dist. LEXIS 13580 at *10 (S.D.N.Y. 1998) (remanding for further proceedings where, "[d]espite the presence of an interpreter, it is also clear that the plaintiff had difficulty understanding the proceedings and the role of counsel").

Plaintiff states that during the hearing, there were multiple occasions where the interpreter could not understand what she was saying, failed to accurately translate her words, or did not understand the question posed by the ALJ or attorney.

It is clear from a thorough review of the transcript that each of the hearing videoconference participants, including the interpreter, who participated telephonically, sometimes had difficulty hearing one another and had to repeat themselves on a few occasions. It is also apparent that the interpreter, in some cases, had to translate questions or answers in a non-literal manner in order to account for differences in the conventions of the two languages, or to account for plaintiff's combining English and Turkish verbiage in her answers. *See e.g.*, T.49 (Int: "[y]our Honor, we're still not clear whether there was only one taxi or several. That's something in Turkish unless you say very specifically not clear"); T.31 (Int: "[i]t's a double challenge in the sense, Your Honor, because she's saying it in the Turkey pronunciation and English word, which is making it more difficult").

Nonetheless, I am not convinced that plaintiff was denied a "qualified" interpreter, and/or that as a result, the record was not fully developed. Plaintiff makes no allegation that the interpreter lacked sufficient training or education. Moreover, despite the challenges identified by plaintiff, the exchange of questions and answers reflected in the bulk of the transcript is smooth and coherent, with only one instance of apparent mistranslation – the interpreter's description of a previous pattern-making job having been performed by plaintiff "at home" instead of in a factory – a mistake which plaintiff herself heard and understood in English, and immediately corrected. (T. 34). At all times, plaintiff appears to have understood the reason for the hearing and the respective roles of the ALJ, interpreter, and her counsel. Plaintiff's counsel was afforded an unlimited opportunity to examine her on the record, and there is no reason to conclude that plaintiff was prohibited from presenting any and all evidence, testimonial and otherwise, that she wished to have the ALJ consider. *See* T. 44 (ALJ: "why don't we just give [plaintiff's counsel] a chance to ask whatever he wants to ask, and if we do the same thing twice, that'll be okay"). The

ALJ also instructed plaintiff that she should "please tell me that you don't understand" if she was asked any questions containing unfamiliar words or concepts, and although some questions had to be repeated because they could not be heard, plaintiff never expressed confusion concerning the meaning or translation of inquiries posed to her by the ALJ or her attorney, and her answers were generally responsive to the questions she was asked. (T. 51). On the whole, I do not find that plaintiff was denied the services of a "qualified interpreter" at her hearing, or that the technical complications posed by combining a videoconference format with a telephonic interpreter deprived plaintiff of a full and fair opportunity to establish her disability claim at the hearing.

Plaintiff also alleges that the ALJ failed to develop the record sufficiently with respect to her cognitive functioning, because a state agency consultative examiner had noted that he believed, based on an interview with plaintiff translated by her husband, that her cognitive functioning was "borderline to deficient." (T. 349). Plaintiff contends that because plaintiff's medical records do not contain any other evidence suggesting a cognitive impairment, the ALJ was required to develop the record further, in order to determine the extent and impact of plaintiff's alleged cognitive impairment on her residual functional capacity.

I find that in this case, further development of the record was not necessary, because plaintiff's medical records were complete, and plaintiff was examined by both medical and psychological experts. The ALJ was not required to solicit evidence to corroborate the finding of the consultative examiner, simply because it described plaintiff as having a level of cognitive functioning that was not claimed by plaintiff as a component of her alleged disability, and which is not reflected anywhere else in the more than four-hundred-page record. Moreover, the examining physician who found that plaintiff responded in a "borderline" manner to his questioning also qualified the examination findings, observing that, "[i]t is very hard for me to assess the degree to which [plaintiff] can follow and understand simple directions. I think she is probably somewhat limited intellectually, but for the most part the problems that her husband

described are connected with her general life situation . . ."[m]y feeling is the examination results are probably not consistent with [plaintiff's] allegations [of disability]." (T. 350)  To the extent that the consistent medical evidence of record indicates that plaintiff has some difficulty processing complicated instructions, the ALJ included a corresponding limitation in plaintiff's RFC.  (T. 15).

Plaintiff further alleges that the ALJ erred in failing to find that plaintiff's headaches and dizziness were "severe" impairments.  Plaintiff cites treatment records showing at least seven occasions, allegedly precipitated by a head injury, in which plaintiff complained of, or was treated for, headaches and/or dizziness between March 20, 2006 and March 12, 2009 that interfered with her daily routine.  (T. 127, 241, 249, 256-258, 263-264, 304-305, 386).  While plaintiff was treated for intermittent headaches or dizziness, there is no medical evidence suggesting that they have an appreciable impact on plaintiff's residual functional capacity, or that the ALJ, who duly considered plaintiff's evidence concerning her dizzy spells (T. 16), erred by failing to characterize her alleged headaches and dizziness as "severe" impairments.

Finally, plaintiff alleges that the ALJ erred in finding that plaintiff's subjective complaints of disabling neck and lower back pain following a 2006 motor vehicle accident were not credible.  I find that the ALJ's credibility determination was adequately supported: no objective testing showed any significant injuries from the accident, plaintiff received minimal pain treatment, discontinued physical therapy, and did not reply upon braces or other devices for her alleged musculoskeletal weakness and pain.  (T. 16, 53-54, 167-169).

Plaintiff's testimony was also, as the ALJ noted, inconsistent.  For example, at the hearing, plaintiff testified that she had completed only the 5th grade in Turkey and was unable to read or write in English (T. 30), which conflicts with her report to the Social Security Administration in that she had completed a 12th grade regular education program, and was able to read and write in English.  (T. 164, 169).

Plaintiff's reports concerning her activities of daily living also belie her accounts of disabling symptoms. Plaintiff receives no mental health treatment, and is able to cook, do laundry, take care of herself, drive, and shop. (T. 14, 175-176, 313, 353). Three days a week, she cares for her three school-aged children without assistance. (T. 347).

Given the discrepancies between plaintiff's subjective complaints and her prior reports, as well as the medical evidence of record, I conclude that the ALJ's finding that plaintiff's complaints were not credible is supported by substantial evidence. I further find that his RFC determination, and his finding that plaintiff retains the RFC to perform her past relevant work as a sewing machine operator, is supported by substantial evidence in the record.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

CONCLUSION

For the reasons discussed herein, the Commissioner's motion for summary judgment (Dkt. #12) is granted, and plaintiff's cross motion for summary judgment (Dkt. #13) is denied. The Commissioner's decision is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 14, 2012.